914 F.2d 256
 RICO Bus.Disp.Guide 7574
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
INGRAM INDUSTRIES, INC., Plaintiff,
v.
John J. NOWICKI, John C. Nowicki and R. Chandler Nowicki,
Defendants-Counterclaim Plaintiffs-Appellants,
and
Edwin Lee Shelton, James W. Miller, Medford J. Brown, J.W.
Miller & Associates and Miller Management Co.,
Inc., Counterclaim Defendants-Appellees.
 No. 89-6310.
 United States Court of Appeals, Sixth Circuit.
 Aug. 30, 1990.
 
 Before BOYCE F. MARTIN, Jr. and DAVID A. NELSON, Circuit Judges, and LIVELY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This is an appeal from the dismissal of a counterclaim for lack of jurisdiction over the persons of the counterclaim defendants. We believe that the court had jurisdiction, and we shall reverse the dismissal.
 
 
 2
 * Ingram Industries, Inc., brought suit in 1979 against John J. Nowicki, John C. Nowicki, and R. Chandler Nowicki. Attempting to join Edwin Lee Shelton, James W. Miller, Medford J. Brown, J.W. Miller & Associates, and Miller Management Co. as new parties, the Nowickis filed counterclaims against them and against Ingram Industries. The dispute between the Nowickis and Ingram Industries has been settled. What is currently at issue is the district court's jurisdiction over the persons of the defendants on the Nowickis' First Amended Counterclaim, which was filed in 1983.
 
 
 3
 Prior to June 29, 1978, the Nowickis were the owners of a controlling stock interest in NewEra Resources, Inc., a coal mining company that had business operations in West Virginia and Kentucky. Ingram Industries, a privately-held Tennessee corporation with its principal place of business in Nashville, Tennessee, also engaged in the mining and sale of coal, among other businesses. Ingram Industries acquired NewEra under circumstances to which we shall turn shortly.
 
 
 4
 As to the counterclaim defendants, Edwin Lee Shelton, a resident of Florida, was a one-third shareholder and the chief executive officer of a company known as Maryland Coal & Coke Company ("MC & C"), a Virginia corporation engaged in the coal brokerage business. James W. Miller, a resident of West Virginia, was likewise an officer and one-third shareholder of MC & C. He was also the chief executive officer of J.W. Miller & Associates and Miller Management, both of which were wholly-owned subsidiaries of MC & C. Medford J. Brown, a resident of Pennsylvania, was, like Messrs. Shelton and Miller, an officer and one-third shareholder of MC & C.
 
 
 5
 NewEra was on the verge of bankruptcy early in 1978, and according to the Nowickis, whose allegations must be taken as true at this stage of the case, Mr. Shelton proposed the following solution to the company's financial problem: (1) that the existing assets and businesses of NewEra and MC & C be combined; (2) that new bank financing and operating funds be obtained for NewEra; and (3) that John J. Nowicki, Shelton, and Brown each have a one-third ownership interest in the combined companies. These proposals, the Nowickis contend, masked a scheme to defraud them. The alleged fraud is supposed to have been carried out by means of the following steps:
 
 
 6
 (1) Mr. Shelton, through his connections with the Philadelphia National Bank, induced the bank to make a $5,500,000 long-term loan to NewEra on the express condition that Messrs. Shelton, Miller, and Brown receive a 60-percent stock interest in NewEra;
 
 
 7
 (2) The Nowickis were removed as officers and directors of NewEra at a shareholders meeting in Lexington, Kentucky, and the removal enabled Messrs. Shelton, Miller, and Brown to assume control of NewEra's operations and assets to the exclusion of the Nowickis;
 
 
 8
 (3) At a NewEra board of directors meeting held in Lexington, Shelton et al. adopted a scheme to strip NewEra of its assets by having MC & C engage in a series of overcharges, fictitious billings, and usurpations of NewEra's corporate opportunities;
 
 
 9
 (4) Mr. Shelton, acting as negotiator and intermediary, induced the Nowickis to sell their minority stock interest in NewEra to Ingram at a price that had been depressed by the stripping of the assets; and
 
 
 10
 (5) Shelton, Miller, and Brown were enabled to sell Ingram Industries their MC & C stock together with their 60-percent interest in NewEra at a price higher than that they would have received if the value of the Nowickis' interests had not been wrongfully depressed.
 
 
 11
 Counts I and V of the counterclaim charged Ingram Industries with violations of Rule 10b-5 and common-law fraud. These counts have been settled. Count II of the counterclaim charges Mr. Shelton with breach of fiduciary duty under Kentucky law. Count IV charges him with violating Rule 10b-5. Count III charges Messrs. Miller and Brown with breach of fiduciary duty. Counts VI and VII charge Shelton, Miller, Brown and the two MC & C subsidiaries with common-law fraud and a civil RICO violation.
 
 
 12
 On May 31, 1985, the present counterclaim defendants moved to dismiss the counterclaim for lack of personal jurisdiction and venue. On June 30, 1987, after a hearing, the district court granted the motion. The court found that the individual counterclaim defendants had merely acted as officers and directors of a Kentucky corporation and that such conduct, standing alone, was not sufficient to subject them to suit in the Eastern District of Kentucky. The court also found that neither of the MC & C subsidiaries had done anything to induce the Nowickis to sell their stock and that the Nowickis had joined them as parties in bad faith for the purpose of manufacturing personal jurisdiction over the individual counterclaim defendants. See 28 U.S.C. Sec. 1359.[1] On July 10, 1987, the appellants moved for reconsideration. The motion was denied September 20, 1989. This appeal followed.
 
 II
 
 13
 The counterclaim defendants concede that the district court had personal jurisdiction under the nationwide service of process provisions of the Securities Exchange Act and the Racketeer Influenced and Corrupt Organizations Act. See 15 U.S.C. Sec. 78aa; 18 U.S.C. Sec. 1965(b).
 
 
 14
 As to venue, both Sec. 78aa and Sec. 1965(a) provide that civil suits may be brought in any district where the defendant is found, has an agent, or transacts his affairs. Under 28 U.S.C. Sec. 1391(b), the action also may be brought where the claim arose or where all the defendants can be found. The defendants admit that the MC & C subsidiaries did business in Kentucky and that if there is a proper RICO claim against the subsidiaries, venue could properly be laid in Kentucky with respect to the other defendants. See 18 U.S.C. Sec. 1965(b), which provides as follows:
 
 
 15
 "In any action [for injury to a person's business or property by reason of a RICO violation] in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof."
 
 
 16
 The defendants argue, however, that the corporate appellees were joined for the improper purpose of manufacturing venue with respect to the individual appellees and that the corporate appellees did nothing to induce the Nowickis to sell their stock in NewEra.
 
 
 17
 But that inducement is not the wrong with which the corporate appellees are charged. The Nowickis accuse them of contributing to the scheme by overcharging NewEra and usurping NewEra's corporate opportunities, thereby depleting NewEra's assets to the ultimate benefit of the individual counterclaim defendants. These actions allegedly devalued NewEra's stock, but did not hurt the individual counterclaim defendants because the money went to the MC & C subsidiaries; the value of what the Nowickis sold to Ingram Industries was diminished, but the value of what the individual defendants sold (their NewEra stock plus their MC & C stock) was not.
 
 
 18
 On its face, the complaint states a claim against the corporate appellees. Venue is proper as to them under 18 U.S.C. Sec. 1965(a) and 28 U.S.C. Sec. 1391(b), and it is proper as to the individual appellees under 18 U.S.C. Sec. 1965(b).[2] Because the parties are properly in court on the federal claims, the court has authority to adjudicate the state claims as well. See Martin v. Steubner, 485 F.Supp. 88, 90 (S.D.Ohio 4979), aff'd, 652 F.2d 652 (6th Cir.1981), cert. denied, 454 U.S. 1148 (1982); 6 C. Wright, A. Miller M. Kane, Federal Practice and Procedure Sec. 1478 (2d ed. 1990).
 
 
 19
 The judgment of the district court is REVERSED, and the case is REMANDED for further proceedings not inconsistent with this opinion.
 
 
 
 [1]
 "A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court."
 
 
 [2]
 The appellees have not moved for a change of venue on forum non conveniens grounds, 28 U.S.C. Sec. 1404(a). In finding that venue is proper in the Eastern District of Kentucky, we express no opinion as to any Sec. 1404(a) motion that may be made on remand